**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| PENNY L. GERHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | No. 09-0174-CV-W-JCE-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, observations by third parties, and observations by treating and examining physicians as they relate to the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 50 years old at the time of the initial hearing before the ALJ, held on July 20, 2006. She alleges disability because of fibromyalgia. Plaintiff has a high school education, and certified nurse aide training, although she stated at the hearing that her certification has expired. She has past relevant work as a nurse's aide, child care worker, and light production worker.

At the initial hearing, plaintiff testified that her last job was as a nanny. She stated that she stopped working because of muscle and joint pain, tenderness, and short-term memory loss. She also acknowledged, however, that her employer got married, so she was let go from the job. She has pain in her knees, the back of her neck, wrist, and all of her joints. Her pain varies from day to day, depending on her activity level and stress. Emotional stress can cause a flare-up. Her pain is mainly worse in her knees, and she has to take a lot of breaks and pace herself. Regarding her memory, plaintiff testified that she has a lack of focus and her concentration gets interrupted easily, so she has to take things very slowly. She would not be able to return to her job as a nanny or daycare provider, even part-time, because of her symptoms, which vary. On a typical day, plaintiff, who lives with her husband, spends time on light housework, but she has to pace herself a lot. She has a dog, but does not walk it. In terms of describing how she paces herself, plaintiff testified that she has learned over the years what she can do regarding mobility. If she's doing something and starts to tire, she will lie down and rest. She does this on a regular basis and very frequently. She spends a varied amount of time resting on a given day, but it could be in the range of four hours altogether. She does go to church once a week, and mainly keeps in contact with her family by phone, although she also visits them. She occasionally takes care of her granddaughter, who is six-and-one-half, but her care only requires bathing and

minimal meal preparation. She also does light gardening. She thought she could walk three blocks, and stand 10-15 minutes. She could not stand more than that because of pain in her legs, joints, and muscles. She would have to move around or lie down after standing that long. Plaintiff had told one of her doctors that she does not like to take pain medication because it makes her feel moody and oppressed. She cannot sit for more than 20 minutes because she gets pinched muscles in her neck and back from sitting in a chair. When she sits too long, she gets up, walks around, and does a little activity. She could not perform a job with a sit-stand option because she requires a nap every day. If she's feeling pretty well, she takes about an hour nap, but if she's not, it could last up to three hours.

A supplemental hearing was held on January 18, 2007, to obtain the testimony of a vocational expert. Plaintiff testified at that hearing that she last worked as a part-time nanny for about a year; she also worked as a preschool teacher for First Assembly of God Church over a span of five years. Previously, she had worked as a certified nurse's assistant part-time, as a home health care aide, as a child care provider, and on a production line assembling magazines. A vocational expert classified the child care worker as being a light, semi-skilled job, and home health care as medium, semi-skilled. The job at the magazine company would be light and unskilled. When the ALJ posed a hypothetical to the vocational expert, which incorporated the Residual Functional Capacity ["RFC"], it was the expert's testimony that such an individual could perform her past relevant work in light industrial production, and could also perform other light, unskilled jobs such as housekeeper, cashier, order clerk, or document preparer.

The ALJ found that plaintiff had the RFC to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and sit, stand or walk six hours in an eight-hour day. It was

also his finding that plaintiff could occasionally climb, stoop, kneel, crouch or crawl, and that she should avoid climbing ladders, ropes, or scaffolds, and concentrated exposure to cold temperatures. He also found that she could follow simple and low-end detailed instructions. The hypothetical posed to the vocational expert also indicated that the hypothetical person was "limited to superficial interaction with the public, which is a limited interaction." [Tr. 359]. The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, February 21, 2004. He further found that the medical evidence established that plaintiff suffers from: "myalgias and arthralgias and dysthymic disorder. . . ." [Tr. 23]. It was his finding that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. He further found that plaintiff was only partially credible. It was the finding of the ALJ that plaintiff is capable of performing her past relevant work as a light industrial production worker. Therefore, it was the ALJ's finding that plaintiff is not under a disability.

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred in failing to include any dysthymic disorder symptoms or impairments in the RFC; and that he erred in failing to explain the weight given to the medical opinions of consulting examiners Breckenridge and Keough. She asserts that the ALJ acknowledged their evaluations, which were that she is impaired, but that the ALJ then ignored these opinions. Plaintiff did not raise any challenges to the findings regarding her physical impairments.

Specifically regarding the RFC finding, an ALJ must determine the RFC, based on the medical evidence regarding the claimant's ability to function in the workplace. Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should also consider "'all the evidence in

the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Id. at 807 (quoting Krogmeier v. Barnhart, 294 F.3d 1019 (8th Cir. 2002). The plaintiff has the burden of producing documents to support the claimed RFC. Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998)). The ALJ, however, has the primary responsibility for making the RFC determination, and the Court is required to affirm that determination if it is supported by substantial evidence in the record as a whole. McKinney v. Apfel, 228 F.3d 860, 862 (8th Cir. 2000).

Plaintiff contends that the RFC determination is flawed because the ALJ failed to include any dysthymic disorder symptoms or impairments in the RFC. She also contends that two consulting examiners founds that she was impaired, and that the ALJ ignored these opinions. Regarding the ALJ's conclusions about plaintiff's mental impairments, he noted that the medical records indicated that was seen by a family physician, Dr. Tarsney, in 2003 for ongoing treatment for depression, anxiety, irritability, and fatigue. The treatment notes indicated that she responded well to Zoloft, which helped with depression and with sleeping. It was also noted that plaintiff rated her depression as a two on a ten-point scale when she saw Dr. Breckenridge, Psy.D., an examining psychologist, in August of 2004. She told Dr. Breckenridge that she was taking Zoloft, which helped with depression. She was assessed with a Global Assessment of Functioning ["GAF"] of 60, which is indicative of moderate symptoms or moderate difficulty in social or occupational functioning. Dr. Breckenridge rendered the opinion that she had average intelligence, but had difficulty understanding and remembering instructions. The doctor observed that plaintiff was stable on Zoloft. He noted that she described depression since childhood, and that she "reported enough symptoms to warrant a diagnosis of Dysthymic Disorder." [Tr. 261].

Dr. Breckenridge noted, during his examination, that she had appropriate affect and did not evidence depression or anxiety during the examination. He found that, based on her performance that day, she would have difficulty understanding and remembering even simple instructions, but that she did "appear capable of sustaining concentration and persistence while working on simple tasks. This client's ability to interact socially and adapt to her environment does not appear to be significantly affected by her depression at this time." [Tr. 261]. Dr. Breckenridge found that her logical memory and digit span was below average and recommended further testing. Plaintiff then saw Mr. Keough, an examining psychologist, who administered further memory testing. She advised him Zoloft helped to maintain balance, focus, and the ability to handle stress. Mr. Keough found that plaintiff's ability to understand and remember instructions was mildly to moderately limited by a mood disorder. [Tr. 267]. He noted a history of being treated for depression over the past fifteen years, with Zoloft being prescribed by a treating physician for the past year. It was his opinion that plaintiff was able to sustain concentration at an adequate pace, but that she was mildly limited in her ability to adapt. Mr. Keough stated that plaintiff appeared to be experiencing a mild to moderate level of impairment regarding her ability to sustain concentration, to be persistent in tasks, and to maintain an adequate pace in productivity.

In making his determination that plaintiff had a dysthymic disorder, the ALJ found that her mental impairment causes mild restrictions in daily activities, mild difficulties in maintaining social function, and mild to moderate difficulties in maintaining concentration, persistence or pace. He noted no episodes of decompensation; no hospitalizations; no regular psychological or psychiatric treatment, counseling, or group activity; and routine activities of daily living.

Based on the record as a whole, the Court finds that the ALJ adequately considered, in

assessing her RFC, plaintiff's medical records, her testimony, and the record as a whole regarding her depression and the level to which it impaired her ability to work. The record indicates that plaintiff has a history of mild to moderate depression, but she has not had any long-term psychiatric treatment, hospitalizations, or periods of decompensation. Plaintiff argues that because the ALJ found that she suffered from a severe impairment of a dysthymic disorder, there should have been a dysthymic disorder-related impairment in the RFC. A review of the record indicates, however, that the opinions of both Dr. Breckenridge and Mr. Keough indicated that plaintiff was mildly to moderately impaired in her ability to understand and remember instructions, and these findings were encompassed in the RFC. The ALJ incorporated their findings and this limitation in the RFC, when he stated that plaintiff was "able to follow simple and low end detailed instructions (unskilled and semiskilled instructions)." [Tr. 26]. The record indicates that the ALJ based his RFC regarding following instructions on the finding by Mr. Keough, upon further memory testing, that her ability to understand and remember instructions was mildly to moderately limited by a mood disorder.

The fact that a severe impairment exists does not, in and of itself, constitute a disabling impairment under the law, where the record does not otherwise contain evidence of a disabling mental impairment. In this case, plaintiff's daily activities, social functioning, and her work history, together with minimal treatment and minimal complaints as attested to at the hearing, belie a finding of a wholly disabling mental impairment. Despite the fact that plaintiff takes antidepressant medication, that fact does not establish a disabling impairment. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). It cannot be said, therefore, that the ALJ erred in his RFC findings regarding her mental impairment. The Court finds that there is substantial evidence in the record as a whole to support the ALJ's RFC determination.

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). The ALJ's findings that plaintiff was not disabled and could perform her past relevant work is supported by the record as a whole. Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 3/11/10